UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Aaron Spencer, *Plaintiff*, v. City of Chicago, *et. al*, *Defendants*. | No. 24 CV 2657 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

In 2023, Chicago Police Officers Alvaro Carrasco and Eva Garcia arrested Aaron Spencer for aggravated possession of a weapon in violation of 720 ILCS 5/24-1.6(a)(2). [Dkt. 32, ¶ 20.][1] A month later, the state dropped the charges. [Dkt. 31, ¶ 41.] Spencer then filed this suit against the City of Chicago and Officers Carrasco and Garcia, bringing a Fourth Amendment claim under 42 U.S.C. § 1983 and state law claims for malicious prosecution and intentional infliction of emotional distress. Before the court is defendants' motion for summary judgment. Because Spencer has not identified any triable issues of fact for a jury to decide, the motion is granted.

I. **Background**

The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits. The court presents the facts in the light most favorable to Spencer as the non-moving party. See *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023).

After observing a vehicle without a front license plate, Chicago Police Officers Alvaro Carrasco and Eva Garcia pulled over the driver, Aaron Spencer. [Dkt. 31, ¶ 4.] While standing at the driver's side window of Spencer's vehicle, Officer Carrasco noticed what he believed to be the rail of a rifle wedged between Spencer's body and the vehicle's center console. [*Id.*, ¶¶ 6–7.] Spencer informed Officer Carrasco that he did indeed have two firearms on his person—the firearm next to the center console, along with a handgun in his front jacket pocket [*Id.*, ¶ 9.]

Aiming to separate Spencer from the firearms, Officer Carrasco asked him to step out of the vehicle. [*Id.*, ¶ 13.] While Spencer initially hesitated to comply, he eventually exited, and Carrasco recovered both the handgun in his pocket and the firearm still in the vehicle. [*Id.*, ¶¶ 14–15.] Officer Carrasco believed that the firearm

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

recovered from the vehicle, which the court will refer to as the "recovered firearm," was a "rifle." [*Id.*, ¶ 16.] While Officer Carrasco has not had training on firearm identification since leaving the Police Academy in 2017, he based his conclusion in part on his experience in the United States Marine Corps where he often carried a rifle. [*Id.*, ¶¶ 19–20; Dkt. 32, ¶ 34.] In particular, he noticed many similarities between the recovered firearm and the one he used in the Marines; for instance, he explained that the firearm accepts a detachable magazine and has a barrel hand guard and pistol grip. [Dkt. 31, ¶¶ 22–24.] In addition, he recognized that it has a flash hider/suppressor attached to the tip of the barrel. [*Id.*, ¶ 27.] Spencer, however, disagrees and characterizes the recovered firearm as a "pistol." [*Id.*, ¶ 17.]

Multiple other police officers arrived at the scene and debated the nature of the recovered firearm. [*Id.*, ¶ 37.] A sergeant, for example, told Officer Carrasco that it was a pistol. [Dkt. 32, ¶ 16.] Spencer was ultimately placed into custody for his possession of it. [Dkt. 31, ¶ 39.] Officer Carrasco signed a criminal complaint against Spencer for aggravated possession of a weapon in violation of 720 ILCS 5/24-1.6(a)(2). [Dkt. 32, ¶ 20.] While Spencer had a valid firearm owner's identification card and concealed carry license, he had not provided an endorsement affidavit to the Illinois State Police or registered the recovered firearm with the Illinois State Police's internal portal. [Dkt. 31, ¶¶ 11, 39.]

Chicago Police Officer Joseph Serio examined and test-fired the recovered firearm. [*Id.*, ¶ 29.] He authored a report, which the parties often refer to as a firearm worksheet, detailing his findings. [*Id.*, ¶ 30.] The worksheet referred to the recovered firearm as the "pistol (R-15)" and classified it as an assault weapon under the Municipal Code of Chicago. [*Id.*, ¶ 31; Dkt. 25-7 at 1.][2] Officer Serio reached this conclusion after determining that the firearm accepts a detachable magazine outside the pistol grip and has a threaded barrel. [Dkt. 31, ¶ 32.] He also observed that it has a black steel flash hider and a barrel shroud that "partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned." [*Id.*, ¶¶ 33–35.][3]

The day after his arrest, Spencer had a bond hearing and he spent six days in Cook County jail post-hearing. [Dkt. 32, ¶ 23.] He was then released and placed on electronic home monitoring and prevented him from going to work or school. [Dkt. 31, ¶ 40; Dkt. 32, ¶ 28.] Around a month later, the state dismissed criminal proceedings against Spencer *nolle prosequi*. [Dkt. 31, ¶ 41.]

---

[2] While Spencer states that "the City's own expert" confirmed in the firearm worksheet that the recovered firearm was a pistol and not a rifle, *see* dkt. 31, ¶ 16; dkt. 32, ¶ 17, the evidence he points to does not support that assertion. In addition to describing the recovered firearm as a semi-automatic pistol, the worksheet describes it as a 5.56 caliber rifle with a barrel length of 7.5 inches. [Dkt. 32-5 at 1.]

[3] Spencer does not contest the conclusions Officer Serio reached in the firearm worksheet, as evidenced by his own reliance on those conclusions. [See Dkt. 33 at 7.]

After police arrested Spencer, his car was impounded. [*Id.*, ¶ 42.] While Spencer contested the impoundment before an administrative law judge, the judge, after viewing a photograph of the recovered firearm and hearing testimony, found Spencer liable for violating 8-20-070 of the Chicago Municipal Code. [*Id.*, ¶¶ 42–43.] That section of the Code prohibits individuals from possessing assault weapons. And the administrative law judge found that the recovered firearm was a "rifle" that fit the Code's definition of assault weapon. [*Id.*, ¶ 47.]

Relevant to his intentional infliction of emotional distress claim, Spencer's six-day incarceration was difficult for him. For "a number of days" while he was incarcerated, Spencer's service dog was "stranded and abandoned." [Dkt. 32, ¶ 24.] During that time, Spencer feared that his dog may have died. [*Id.*, ¶ 25.] Spencer also faced hardships upon his release. Because house arrest prevented him from working, he fell behind on rent and he and his daughter were evicted from their home. [*Id.*, ¶ 29.] Spencer no longer trusts police and is anxious about interactions with them. [*Id.*, ¶ 31.] He has lost sleep and weight and believes he may have anxiety or PTSD stemming from his arrest and incarceration. [*Id.*, ¶¶ 32–33.]

Based on these events, Spencer filed suit against the City of Chicago and Officers Carrasco and Garcia, alleging violations of his Fourth Amendment rights and various state law claims.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

## III. Analysis

### A. Section 1983 Fourth Amendment Claims

Section 1983 allows an individual to file suit against state actors for alleged constitutional violations. See *Neita v. City of Chicago*, 148 F.4th 916, 930 (7th Cir. 2025). The Supreme Court has recognized Fourth Amendment claims based on both wrongful arrest and malicious prosecution. See *Thompson v. Clark*, 596 U.S. 36, 42 (2022) (malicious prosecution); *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (wrongful arrest). "Probable cause to arrest," however, "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest [] or malicious

3

prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). The officers here had probable cause to arrest and charge Spencer under 720 ILCS 5/24-1.6(a)(2) for aggravated unlawful possession of a weapon. Even if probable cause was a close call (it isn't), the officers at the very least had "arguable probable cause," so qualified immunity shields them from liability. *Mack v. City of Chicago*, 151 F.4th 887, 895 (7th Cir. 2025).

### 1.  Probable Cause

"Probable cause to arrest exists when a reasonable officer with all the knowledge of the on-scene officers would have believed that the suspect committed an offense defined by state law." *Petersen v. Pedersen*, 140 F.4th 421, 426 (7th Cir. 2025) (internal citations omitted).[4] "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (internal citations omitted). "Probable cause" in other words, "is not a high bar." *Wesby*, 583 U.S. at 57 (internal citations omitted). It is a standard that "inherently allows for reasonable mistakes." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). And "[i]n making probable-cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *Wesby*, 583 U.S. at 57.

Although Officers Garcia and Carrasco arrested Spencer for violating 720 ILCS 5/24-1.6(a)(2), the officers' opening brief focuses on whether they had probable cause to arrest and charge Spencer under Illinois' assault weapon ban. The Seventh Circuit has explained that, "whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 682 (7th Cir. 2007) (internal citation omitted). The court's summary judgment analysis, then, focuses on the statute cited in the criminal complaint, 720 ILCS 5/24-1.6(a)(2) (aggravated unlawful possession of a weapon). And for this same reason, it does not address the officers' alternative collateral estoppel argument— that the administrative law judge's finding that Spencer violated 8-20-070 of the

---

[4]  While Spencer is correct that courts analyze probable cause for malicious prosecution at the time of charging rather than the time of arrest, see *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011), he does not contend that any facts known to the defendants in this case differed between the time of arrest and the time of charging. So the court concludes that the probable cause analysis remains the same. That is, if the officers had probable cause to arrest Spencer for violating 720 ILCS 5/24-1.6(a)(2), then the officers had probable cause to sign a criminal complaint stating as much.

Chicago Municipal Code by possessing a "rifle" within the meaning of the Code's definition of assault weapon.[5]

That aggravated unlawful possession of a weapon statute provides that a person commits the offense "when he or she knowingly" "carries or possess on or about his or her person, upon any public street" "any pistol, revolver, stun gun or taser or other firearm" and, as relevant here, one of the following factors is present: "(A) the firearm, other than a pistol, revolver, or handgun, possessed was uncased, loaded, and immediately accessible at the time of the offense; or (A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-1.6(a)(3).

The parties only dispute whether the firearm recovered near Spencer's front console was a firearm "other than a pistol, revolver, or handgun." Spencer says the firearm is a pistol, so the statute does not apply because he has a valid concealed carry license.[6] The officers, of course, disagree.

But remember that probable cause does not require certainty. That means the court need not take a stance on the exact status of the recovered firearm. It must only determine whether a reasonable officer with Carrasco's knowledge would have believed the firearm was not a pistol, revolver, or handgun. The answer is yes.

Chapter 720 of the Illinois Code does not define revolver or pistol, but it defines handgun as "any device which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas that is designed to be held and fired by the use of a single hand." 720 ILCS 5/24-1.6(a-5) (citing 430 ILCS 66/5). It also specifically excludes a "short-barreled rifle," see 430 ILCS 66/5, which includes "any rifle having one or more barrels less than 16 inches in length or a shotgun having one or more barrels less than 18 inches in length or any weapon made from a rifle or

---

[5] Whether the officers had probable cause to arrest and charge Spencer with aggravated unlawful possession of a weapon under 720 ILCS 5/24-1.6(a)(2) is a necessary element of Spencer's Fourth Amendment claim. So although the officers' failure to mention 720 ILCS 5/24-1.6(a)(2) at all in their opening brief is bewildering, Spencer's argument that the court should not address whether the officers had probable cause under that statute is unconvincing, so the motion to strike is denied. [Dkt. 37.]

[6] Spencer also argues that the officers should have filed the criminal complaint pursuant to 720 ILCS 24-1.6(a)(1), which governs possession "on or about his or her person *or in any vehicle.*" *Id.* (emphasis added). Perhaps subsection (a)(1) would have been a better fit, but the court sees nothing in the statute preventing application of subsection (a)(2). The recovered firearm was indeed "on or about" Spencer's person. 720 ILCS 24-1.6(a)(2) (governing possession "on or about his person").

5

shotgun, whether by alteration, modification, or otherwise, if such a weapon as modified has an overall length of less than 26 inches," 720 ILCS 5/24-1(a)(7)(ii).

Based on his experience in law enforcement and the military, Officer Carrasco determined that the recovered firearm was not a handgun, pistol, or revolver. Given the presence of a barrel shroud "that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned," *see* dkt. 31, ¶ 35, a reasonable officer with Officer Carasco's experience and training could conclude that the recovered weapon was not a handgun meant to be fired with one hand. That leaves revolver and pistol, which the statute does not define.

Another Illinois statute, however, bans the possession of "assault weapons." 720 ILCS 5/24-1.9. As relevant here, assault weapon is defined as:

> (C) A semiautomatic pistol that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:
> (i) a threaded barrel;
> (ii) a second pistol grip or another feature capable of functioning as a protruding grip that can be held by the non-trigger hand;
> (iii) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;
> (iv) a flash suppressor;
> (v) the capacity to accept a detachable magazine at some location outside of the pistol grip; or
> (vi) a buffer tube, arm brace, or other part that protrudes horizontally behind the pistol grip and is designed or redesigned to allow or facilitate a firearm to be fired from the shoulder.

720 ILCS 5/24-1.9(C).

The firearm worksheet filled out by Officer Serio categorized the recovered firearm as an assault weapon[7] because he found that it has "the capacity to accept a detachable magazine," "a threaded barrel," "a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm

---

[7] The firearm worksheet classifies the recovered firearm as an assault weapon under the Municipal Code of Chicago, not a state statute. [Dkt. 32-5 at 1.] But the same attributes that make the firearm an assault weapon under the ordinance—a detachable magazine, threaded barrel, barrel shroud, and pistol grip—also make it an assault weapon under 720 ILCS 5/24-1.9(C). *Compare* 720 ILCS 5/24-1.9(C) *with* Municipal Code of Chicago 8-20-010(a)(6).

6

with the non-trigger hand without being burned, but excluding a slide that encloses the barrel," and a "flash suppressor." [Dkt. 31, ¶ 35.]

Because Illinois law generally prohibits individuals from possessing assault weapons at all, common sense suggests that "pistol" as used in 720 ILCS 5/24-1.6(a)(3) would not include a semi-automatic pistol that meets Illinois's definition of assault weapon. Indeed, the only reason the statute excepts pistols, revolvers, and handguns from paragraph (3)(A) is because it includes pistols, revolvers, and handguns in paragraph (3)(A-5) *unless* the individual possessing the pistol, revolver, or handgun has a valid license under the Firearm Concealed Carry Act. But a license under the Firearm Concealed Carry Act would not allow an individual to carry a semi-automatic pistol meeting the definition of assault weapon. So a reasonable police officer with similar training to Officer Carrasco could have believed that the recovered firearm was not a pistol, revolver, or handgun as used in 720 ILCS 5/24-1.6(a)(3).

Spencer, for his part, has not pointed to any statute or case law that suggests "pistol" includes a "semi-automatic pistol" meeting the definition of an assault weapon. And with no dispute regarding other elements of the statute, an officer's conclusion that the recovered firearm is not a pistol, handgun, or revolver establishes probable cause that Spencer violated the statute. Whether Spencer was ultimately convicted of violating any crime is of no matter. See *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622–23 (7th Cir. 2010). ("To form a belief of probable cause, an arresting officer is not required…to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute.")

### 2. Qualified Immunity

Even if the officers did not have probable cause, Spencer's Fourth Amendment claims still fail. Qualified immunity shields state actors from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is a low standard. "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and allows police officers "breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). So long as "officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley*, 475 U.S. at 341.

In the context of wrongful arrests, police officers are entitled to qualified immunity when "arguable probable cause" supports the arrest. *Abbott*, 705 F.3d at 714–15. An officer has arguable probable cause when he "reasonably but mistakenly believe[s] that probable cause exists." *Id.* at 715. Relevant here, "where the law is open to interpretation, qualified immunity protects police officers who reasonably

7

interpret an unclear statute." *Mustafa v. City of Chicago*, 442 F.3d 544, 549 (7th Cir. 2006).

As explained above, a reasonable police officer could conclude that Spencer's firearm fit the definition of an assault weapon under Illinois law. And because Illinois bans assault weapons, a reasonable officer could then reason that an assault weapon would not qualify as a pistol under 720 ILCS 24-1.6(3). Spencer points to no law or case that says otherwise, so the court cannot conclude that Officers Carrasco or Garcia violated clearly established law. *Abbott*, 705 F.3d at 723–24 ("Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of defeating it either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.").

Spencer's argument that Officer Carrasco's belief was unreasonable because a sergeant on scene informed Carrasco that the recovered firearm was a pistol under Illinois law, only supports arguable probable cause. [Dkt. 33 at 6; Dkt. 34, ¶ 16.] The exact status of the recovered firearm was, at the very least, open to interpretation and a "reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022). Nothing about the use of the term "RF-15 (Pistol)" on the firearms worksheet changes this conclusion. [Dkt. 33 at 7.] The officers are protected by qualified immunity because neither officer violated Spencer's clearly established constitutional rights.[8]

### B. State Malicious Prosecution Claim

Spencer's claim for malicious prosecution under Illinois state law fails for the same reason his Fourth Amendment claims fail—the officers had probable cause to arrest him. See *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) ("To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause…"). Put most simply, Spencer has not pointed to any evidence that would allow a reasonable juror to conclude that officers acted with malice which, as its moniker suggests, is a necessary element of the claim. See *Beaman v. Freesmeyer*, 183 N.E.3d 767, 792 (Ill. 2021) ("The element of malice may be inferred from a lack of probable cause when the circumstances are inconsistent with good faith by the prosecutorial

---

[8] To the extent that Spencer sought to bring § 1983 claims against the City of Chicago, the court grants summary judgment in favor of the City because Spencer has not alleged any official policy or custom. See *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978).

team and lack of probable cause has been clearly proved."). The officers are entitled to summary judgment on Spencer's malicious prosecution claim.

### C. Intentional Infliction of Emotional Distress

To succeed on his claim for intentional infliction of emotional distress, Spencer must show, among other things, that the officers' conduct was "truly extreme and outrageous." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (internal citation omitted). "Conduct is of an extreme and outrageous character where recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (internal citations omitted). "Liability is found only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). When "abuse of some position that gives [a defendant] authority over the plaintiff or the power to affect the plaintiff's interests," such as that of a police officer, "courts consider the reasonableness of a defendant's belief that his objective is legitimate." *Sun,* 99 F.4th at 1013 (citing *Schweihs v. Chase Home Fin.,* 77 N.E.3d 50, 63 (Ill. 2016)).

On this record no reasonable juror could find that Officers Garcia or Carrasco did not reasonably believe their objective was legitimate. Illinois courts "give greater latitude to defendants who 'pursue a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Sun*, 99 F4th at 1013-1014 (cleaned up) (citing *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001)). Spencer points to no evidence undermining the veracity of Defendants' intentions, and certainly does not identify facts from which a reasonable jury could think it outrageous or resent a police officer for carrying out an arrest based on probable, or even arguably probable, cause. See *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1123 (N.D. Ill. 1997) (analyzing an IIED claim and finding that "[i]n situations involving unlawful arrests or excessive force by police officers, there must be more than just a lack of probable cause or some excessive force."). Nothing in the record suggests that either defendant acted outrageously by arresting and citing Spencer for aggravated possession of an unlawful weapon. The officers are entitled to summary judgment on Spencer's IIED claim.

### IV. Conclusion

Defendants' motion for summary judgment is granted.

Enter: 24-cv-2657
Date: October 20, 2025

Lindsay C. Jenkins

9